UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT SCHUTZA,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CARMAX AUTO SUPERSTORES CALIFORNIA, LLC,<br><br>　　　　　　　　　　Defendant. | Case No.: 14-cv-2617-L-JLB<br><br>**ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Pending in this action filed pursuant to the Americans with Disabilities Act are parties' cross-motions for summary judgment. The motions are opposed. The moving parties filed their respective reply briefs. The motions are decided on the briefs without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons which follow, the motions are denied.

**I.　BACKGROUND**

Plaintiff is a paraplegic who uses a wheelchair for mobility. In June 2014, he was shopping for a car. He visited CarMax on Balboa Avenue in San Diego, which is operated by Defendant. CarMax is a used car retailer. Plaintiff, who uses hand controls for driving, wanted to test drive cars before purchasing. He requested that temporary hand controls be installed in the cars he wanted to test drive; however, Defendant did not

have any cars with hand controls, and would not provide any cars for Plaintiff to test drive.

According to Plaintiff, Defendant does not offer, and will not install, temporary hand controls on cars for disabled persons to test drive. Instead, Defendant's employees suggested that Plaintiff purchase a car without test driving it, install his own hand controls, and then decide if he wanted to keep the car. He could return the car for a refund within 5 days after purchase. Plaintiff contends that installing hand controls is simple, inexpensive and routinely done by car rental agencies and car dealerships, and does not cause any damage to the car.

Plaintiff filed a complaint alleging that Defendant's failure to install temporary hand controls discriminates against persons with disabilities in violation of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA"); (2) the Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.* ("Unruh"); and (3) the Disabled Persons Act, Cal. Civ. Code § 54 *et seq.* ("DPA"). He seeks injunctive relief and damages.

Plaintiff filed a motion for partial summary judgment seeking a finding that Defendant violated the ADA and requesting injunctive relief. Arguing that the ADA does not require it to install temporary hand controls, Defendant cross-moved for summary judgment, or alternatively for partial summary judgment.

## II. DISCUSSION

Federal Rule of Civil Procedure 56 empowers the court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment or adjudication of issues is appropriate if depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c)(1).

The burden on the party moving for summary judgment depends on whether it bears the burden of proof at trial.

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*See C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). If the nonmoving party would bear the burden at trial, the moving party can meet the burden on summary judgment by pointing out the absence of evidence with respect to any one element of the opposing party's claim or defense. *See Celotex*, 477 U.S. at 325.

> When the moving party has carried its burden . . ., its opponent must do more than simply show that there is some metaphysical doubt as to the material facts[, but] must come forward with specific facts showing that there is a genuine dispute for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks, citations and footnote omitted). The nonmoving party can make its showing by "citing to particular parts of materials in the record . . .; or [¶] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. Proc. 56(c)(1).

> [W]here the nonmoving party will bear the burden of proof at trial, [it must] go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial" on all matters as to which it has the burden of proof.

*Celotex*, 477 U.S. at 324 (internal quotation marks omitted).

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge

/ / / / /

> . . .. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The filing of cross-motions for summary judgment "does not necessarily mean there are no disputed issues of material fact and does not necessarily permit the judge to render judgment in favor of one side or the other." *Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir. 1975). Furthermore, "each motion must be considered on its own merits," and the court must consider evidence submitted in support of and in opposition to both motions before ruling on each one. *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

Plaintiff seeks summary adjudication that Defendant violated the ADA. The ADA sets out a general rule:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Plaintiff's theory of the case is that Defendant discriminated against him under 42 U.S.C. § 12182(b)(2)(A)(ii), which defines discrimination as

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

To prevail on this claim, a plaintiff must establish that:

> (1) he is disabled as that term is defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the defendant employed a discriminatory policy or practice; and (4) the defendant discriminated against the plaintiff based upon

/ / / / /

the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability.

*Karczewski v. DCH Mission Valley LLC,* 862 F.3d 1006, 1010 (9th Cir. 2017) (internal quotation marks and citation omitted). "If Plaintiff establishes a prima facie case, then Defendant must make the requested modification unless it proves that doing so would alter the fundamental nature of its business." *Id.* (internal quotation marks and citation omitted)

It is undisputed that Defendant does not have a policy or practice of considering disabled customers' requests to install any type of hand controls to test drive the cars it offers for sale. Plaintiff contends this is a discriminatory policy or practice under the ADA, which Defendant refused to modify, and that providing temporary hand controls is a reasonable modification of that policy. Defendant counters that modification would be unreasonable, would fundamentally alter the goods it offers for sale, and asserts other defenses.[1]

In a factually nearly identical case, *Karczewski v. DCH Mission Valley* held that the ADA does not "categorically preclude[] a claim that a car dealership must provide hand controls for test drives." *Karczewski,* 862 F.3d at 1017. However, it elaborated that "[f]or many car dealerships, the accommodation of installing temporary vehicle hand controls may prove to be unreasonably burdensome." *Id.* It went on to outline an example where the accommodation may prove to be reasonable:

> For example, the installation of vehicle hand controls is likely reasonable at a large dealership that regularly installs hand controls, has spare universal hand controls on hand, and employs many mechanics with expertise in installing hand controls, when advance notice is given by a customer with clear expertise in using hand controls.

---

[1] Defendant objected to some of Plaintiff's expert evidence. (Docs. no. 59-8 & 62-1.) The objections are overruled as moot, because the Court did not rely on the evidence to which Defendant objected.

5

*Id.* Whether provision of hand controls is required under the ADA depends on the underlying facts of the case. *Id.* "Public accommodations must start by considering how their facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience." *Id.* (quoting *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012)).

### A. <u>**Reasonableness of Requested Modification**</u>

Reasonableness of accommodation is an element of Plaintiff's claim.

> [W]hether a particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it.

*Karczewski,* 862 F.3d at 1011 (quoting *Fortyune v. Am. Multi-Cinema, Inc.,* 364 F.3d 1017, 1083 (9th Cir. 2004)).

Defendant does not dispute that the hand controls would be effective in light of Plaintiff's disability, but contends requiring installation would be unduly costly. Defendant is in the business selling used cars of various makes and models. It does not manufacture any cars, is not affiliated with a manufacturer, and does not specially order vehicles from manufacturers or other dealers. (Doc. no. 63 (Joint Statement of Undisputed Facts ("Undisputed Facts")) at 3.)[2] It repairs, services, and reconditions the cars it offers for sale and removes any after-market products installed by former owners, but does not otherwise modify the cars prior to sale. (Doc. no. 59-4 ("Robinson Decl.") at 2.)

Defendant's expert, Terry Barton, a licensed and certified installer of a variety of hand controls (doc. no. 59-5 ("Barton Decl.") at 1), agrees with Plaintiff that temporary hand controls can be installed and removed without any physical modifications to the

---

[2] Page numbers are the numbers assigned by the Court's ECF system.

vehicle. (*Id.* at 6.) They are marketed and sold directly to end users, and are "universal" in that they can be installed into any kind of car, so long as it has automatic transmission, power brakes and power steering. (*Id.* at 7.) Plaintiff submitted a declaration of its expert Carl Beels, a safety and human factors engineer, who tested a hand control system by installing and uninstalling it from a used car. (Doc. no. 61-1 ("Beels Decl.") at 1-2.) He concluded that a trained car mechanic could install the system, make final adjustments and safety test it within an hour or less, and could uninstall it in less than 30 minutes. (*Id.* at 2.) Car dealerships offer test drives with temporary hand controls (doc. no. 54-1 (Pl.'s Mem. of P.&A.) at 13 n.22 (citing dealership websites)), and car-rental agencies install temporary hand controls for their disabled customers, *see Karczewski,* 862 F.3d at 1014 n.3.

Defendant counters that although installation of temporary hand controls may be feasible, in the used car sales business, outfitting each disabled customer's desired vehicle with temporary hand controls for a test drive would entail more than generic installation. Defendant sells a wide variety of makes and models. Plaintiff's expert reported that there are spec sheets "to provide recommended adjustments tailored for each specific vehicular model," some of which are posted online, and others that can be obtained on request. (Doc. no. 61-2 ("Beels Preliminary Report") at 3.) Hand controls manufacturer technicians are also available for further telephone consultations regarding installation for specific makes and models. (*Id.*) Accordingly, specific adjustments would be needed for each make and model a disabled customer wanted to drive, requiring special instructions in each instance. Furthermore, Defendant contends that spec sheets may not be available for every year of every make and model, and that in some instances the vehicle model-specific adjustments require permanent alternation to the hand controls. (Doc. no. 59-1 (Def.'s Opp'n) at 22 & n. 3&4 (citing spec sheet web pages).) Finally, even if spec sheets are available for every make and model, and installation could be accomplished in every instance without altering the temporary hand controls, Defendant would have to hire technicians trained in hand controls installation, or train its technicians for this task, as

7

well as to evaluate if the customer's chosen vehicle is suitable for temporary hand controls and the disabled customer is capable of safely using them. (*See* Robinson Decl. at 3; *see also* Barton Decl. at 7, 8.)

Based on the foregoing, there is a genuine dispute as to the reasonableness of Plaintiff's requested recommendation in light of the cost to Defendant to implement it. *See Karczewski,* 862 F.3d at 1011. Because reasonableness is an element of Plaintiff's case, his motion for partial summary judgment is denied. *See C.A.R. Transp. Brokerage Co.,* 213 F.3d at 480.

B. **Affirmative Defenses**

The Court next turns to affirmative defenses to address Defendant's motions for summary judgment or, in the alternative, for partial summary judgment.

1. **Fundamental Alteration of the Nature of Defendant's Goods**

Whether making a modification would fundamentally alter the nature of Defendant's goods, services, facilities, privileges, advantages, or accommodations is an affirmative defense. *Karczewski,* 862 F.3d at 1013; 42 U.S.C. § 12182(b)(1)(A)(ii). Defendant argues that installing hand controls would fundamentally alter the nature of its business, and the goods and services it provides, because it would render the cars non-compliant with the National Highway Traffic Safety Administration ("NHTSA") regulation regarding accelerator systems. *See* 49 C.F.R. § 571.124.

The regulation requires that certain accelerator control systems use at least two power sources to ensure the return of a vehicle's throttle to the idle position when the driver removes the actuating force, usually the driver's foot, from the accelerator control, or in case of a severance or disconnection in the accelerator control system. 49 C.F.R. § 571.124. The purpose is to reduce accidents resulting from unintentional or spontaneous acceleration. *Id.*

Defendant relies in part on a letter from the NHTSA General Counsel. (Doc. no. 59-7 (Def.'s Req. for Jud. Not., Ex. A) at 4-6 ("Letter").) The Court takes judicial notice of the Letter, which was published on the NHTSA website. *See Smith v. Los Angeles*

8

*Unif. Sch. Distr.,* 830 F.3d 843, 851 n.10 (9th Cir. 2016) ("courts routinely take judicial notice of letters published by the government . . . as well as records and reports of administrative bodies") (internal quotation marks and citations omitted). The Letter is a response to an inquiry from a third party regarding compliance of a specific electronic gas and brake control with 49 C.F.R. § 571.124. (Letter at 4-6.) Although, outside its own investigations, the NHTSA does not make determinations regarding any particular vehicle's compliance, and made only "general observations," it is apparent that the electronic gas and brake control system addressed in the Letter is materially different from the temporary hand controls at issue here.[3] (*Cf. id. with* Undisputed Facts at 2-3.) Furthermore, the Letter states that the regulation applies to the sale of new vehicles, and that that the standard for alterations to the vehicle after its sale to the initial purchaser are different, *i.e.,* to not "knowingly make inoperative any part . . . installed on a motor vehicle . . . in compliance with an applicable motor vehicle safety standard." (Letter at 5-6.) The Letter therefore does not support Defendant's position that installation of temporary hand controls would render the vehicle non-compliant with 49 C.F.R. § 571.124.

Defendant also relies on its expert's opinion; however, Defendant's expert conceded there has been no testing by car or hand control manufacturers regarding the effect of temporary hand controls relative to federal safety regulations. (Barton Decl. at 9.) He opined that due to the added weight on the accelerator pedal from the temporary hand controls, they could potentially override the gas pedal's own return-to idle mechanism or otherwise interfere with the vehicle's return-to-idle mechanism. (*Id.*) He also opined that because temporary hand controls themselves do not have their own independent mechanism to return the gas pedal to idle when the driver releases it, they

---

[3] As Defendant concedes, at most, the Letter stands for the general proposition that "installation of hand controls *could* affect compliance with 49 C.F.R. § 571.124. (Doc. no. 62 (Def.'s Reply) at 6 (emphasis in original).)

could potentially continue to engage the gas pedal, after the driver had released it. (*Id.* at 9-10.) Although Defendant's expert pointed out these possibilities, he did not opine that temporary hand controls violate 49 C.F.R. § 571.124. (*See id.* at 9-10.) Defendant has not met its burden as the moving party with respect to its defense under 42 U.S.C. § 12182(b)(1)(A)(ii).

### 2. Safety Risks

Alternatively, Defendant argues that temporary hand controls would pose a safety risk, which Defendant is not required to undertake pursuant to 28 C.F.R. § 36.301.[4] Defendant relies on the provision that "[a] public accommodation may impose legitimate safety requirements that are necessary for safe operation." *Id.* § 36.301(b).

Defendant's expert opined that temporary hand controls are not as safe as permanent hand controls, because they are not as firmly mounted and can slip or come loose during use. (Barton Decl. at 5-7.) On the other hand, Plaintiff's expert opined that a trained mechanic could safety check and field test temporary hand controls as a part of installation. (Beels Decl. at 2.)

Further, Defendant's expert opined that temporary hand controls require the user to have good grip strength, hand function, dexterity and upper body strength to be able to safely use them, and that operating hand controls requires evaluating the driver's capacity prior to deciding whether he or she is able to use temporary hand controls and which style is most appropriate. (*Id.* at 7-8, 10-11.) Finally, to ensure safe operation, the driver should be trained on the hand controls which are installed. (*Id.* at 10-11.)

Defendant's evidence shows that the use of temporary had controls may present safety risks; however, Plaintiff's and Defendant's expert opinions also show how the risks can be overcome. The evidence that overcoming safety risks would impose additional

---

[4] Defendant relies on the implementing regulations to preclude liability, even if Plaintiff made a claim under the ADA. *See, e.g., Karczewski,* 862 F.3d at 1017 (considering whether § 36.306 precludes the plaintiff's claim).

costs on Defendant is relevant to the issue whether providing temporary hand controls is reasonable under the circumstances of this case, but is not sufficient to show that the accommodation is exempted by 28 C.F.R. § 36.301.

Moreover, the regulation does not excuse accommodation based on hypothetical safety concerns, as presented by Defendant's expert. Instead, "[s]afety requirements must be based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities." 28 C.F.R. § 36.301(b). Furthermore,

> A public accommodation shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered.

*Id.* § 36.301(a). Taken at face value, Defendant's argument exempts installation of any type of temporary hand controls on any used car for any paraplegic at any used car dealership due to potential safety risks. The regulations do not allow for this kind of broad-brush exclusion in the absence of a specific showing regarding actual risks. Defendant has not met its burden to show that excluding all paraplegics and all temporary hand controls is necessary.

### 3. Personal Device

Finally, Defendant argues that the ADA does not require it to install temporary hand controls because they are "personal devices" under 28 C.F.R. § 36.306. This argument is precluded by *Karczewski* and is therefore rejected. *See Karczewski,* 862 F.3d at 1015-17.

For the foregoing reasons, Defendant has not met its burden as the moving party to show it would be entitled to a directed verdict on its affirmative defenses. *See C.A.R. Transp. Brokerage Co.,* 213 F.3d at 480. Its motions for summary judgment and, alternatively, for partial summary judgment are therefore denied. As both parties'
/ / / / /

11

motions are denied, the Court does not reach Plaintiff's derivative state law claims or his request for injunctive relief.

### III. CONCLUSION

1. The parties' motions are denied.

2. Plaintiff conceded he is not requesting installation of permanent hand controls and is not contending that failure to install temporary hand controls is a failure to remove an architectural barrier under 42 U.S.C. § 12182(b)(2)(A)(iv). (Doc. no. 61 at 4.) These theories of liability are therefore not a part of Plaintiff's case.

3. The parties shall forthwith jointly place a call to the assigned Magistrate Judge to request a scheduling order.

**IT IS SO ORDERED.**

Dated: September 24, 2018

_____
Hon. M. James Lorenz
United States District Judge